**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ARTHUR DROSKI,
and CHERYL DROSKI,

                                          Case No. 2:11-cv-11193

      Plaintiffs,                           Hon. Lawrence P. Zatkoff

v.

WELLS FARGO BANK, N.A.,

      Defendant.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on  August 6, 2012, 2012.

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment [dkt 9]. The Motion has been fully briefed.  The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument.  Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without oral argument. For the following reasons, Defendant's Motion for Summary Judgment is GRANTED.

## II.  BACKGROUND

Plaintiffs are the owners of property commonly known as 21323 Waverly Drive, Macomb Township, Michigan 48044 ("Property").  On August 24, 2007, Plaintiffs refinanced their then-existing mortgage on the Property and obtained a loan in the amount of $289,000 (the "Loan") from Stratford Funding, Inc. ("Stratford").  As security for repayment of the Loan,

Plaintiffs granted a mortgage encumbering the Property (the "Mortgage") to Stratford. On August 29, 2007, Stratford assigned the Mortgage to Defendant.

Sometime in 2009, Plaintiffs defaulted under the Loan by failing to make payments when due. On December 1, 2009, Plaintiffs and Defendant entered into a Home Affordable Modification Program Loan Trial Period Agreement (the "TPP"). The TPP was a temporary agreement under which Plaintiffs were required to make monthly payments of $1,532.76 on December 1, 2009, January 1, 2010, and February 1, 2010. Upon satisfaction of the TPP, Plaintiffs could be considered for a permanent modification.

Plaintiffs successfully remitted all payments required under the TPP. Plaintiffs were then reviewed, and approved, for a permanent modification of the Loan. On September 1, 2010, the parties entered into a Home Affordable Modification Agreement (the "Modification Agreement"), under which the Loan and Mortgage were permanently modified. Under the Modification Agreement, Plaintiffs agreed to repay the Loan in monthly installments for a term 27 years, with the interest rate adjusting annually after one year. The Mortgage remained in place as security for repayment of the Loan. Pursuant to the terms of the Modification Agreement, Plaintiffs agreed that the Modification Agreement "shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that [they] previously entered into with [Defendant]."

In connection with the Modification Agreement, Plaintiffs enrolled in an automatic payment withdrawal program to have their monthly Loan payments deducted directly from their checking account (the "Direct Withdrawal Authorization"). Under the Direct Withdrawal Authorization, Plaintiffs each acknowledged that:

> I understand that I will receive confirmation specifying the date the electronic withdrawals begin. I understand that I will continue to make my payment until I receive this confirmation and electronic

> withdrawals begin.  I understand that this authorization and the program services in no way alter or lessen my obligation under my existing mortgage contract regarding the amount of monthly payments, when payments are due, the applications of payments, the assessments of late charges or the determination of delinquencies.

After entering into the Modification Agreement, Plaintiffs failed to make any of the required payments.  Defendant inquired as to whether Plaintiffs could qualify for a subsequent modification with the Federal Home Loan Mortgage Corporation guidelines and determined that they could not.    On January 25, 2011, Defendant's agent, Trott & Trott, P.C. ("Trott"), sent Plaintiffs a notice ("Notice") in connection with Mich. Comp. Laws § 600.3205a(1).  The parties dispute whether Plaintiffs responded to the Notice.  Foreclosure proceedings began shortly thereafter, and a sheriff's sale was scheduled for March 25, 2011.

On March 2, 2011, Plaintiffs filed their Complaint in Macomb County Circuit Court, alleging the following Counts:  Count I – Violation of Mich. Comp. Laws § 600.3201, *et seq.*; Count II – Injunctive Relief;   Count III – Promissory Estoppel; Count IV – Violation of the Michigan Consumer Protection Act ("MCPA"); and Count V – Negligence.  On March 24, 2012, Defendant removed the case to this Court.

### III.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

3

> (B) showing that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot
> produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider

other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine

dispute as to a material fact, and all inferences should be made in favor of the nonmoving party.

*Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'—that is,

pointing out to the district court—that there is an absence of evidence to support the nonmoving

party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at

325).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving

party, who "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position

will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which

the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 252 (1986).

## IV.  ANALYSIS

### A.  COUNT I (VIOLATION OF MICH. COMP. LAWS § 600.3201, *ET SEQ.*)

In Count I, Plaintiffs allege that Defendant violated the "loan modification statute" by

failing to utilize "all of the available tools enumerated in § 600.3205c(1)(a)." The Court notes,

however, that § 600.3205c(1) only applies "[i]f a borrower *has contacted a housing counselor*

4

under section 3205b." Mich. Comp. Laws § 600.3205c(1) (emphasis added).[1] Plaintiffs have failed to state a claim for violation of § 600.3205c because they have not alleged that they contacted a housing counselor as required under the statute.  For this reason, Plaintiffs' first Count fails as a matter of law.

Notwithstanding this failure, Plaintiffs' argumentation is flawed for other reasons.  In their response, Plaintiffs argue that foreclosure was improper because Plaintiffs "had attempted to modify the terms of their mortgage and were denied that opportunity."  This argument is misplaced.  Plaintiffs cite to no legal authority to support their contention that Defendant was required to modify Plaintiffs' loan before commencing a foreclosure by advertisement under Michigan law. Yet, even if Defendants were obligated to modify Plaintiffs' loan, the evidence indicates that Defendant had, in fact, done so:  On December 1, 2009, after Plaintiffs' default, the parties entered into the TPP; on September 1, 2010, the parties entered into the Modification Agreement, which superseded the terms of any modification, forbearance, Trial Period Plan or Workout Plan that the parties previously entered into.

Plaintiffs also argue that they were not in default under the Modification Agreement. According to Plaintiffs, Defendant had failed to deduct payments from Plaintiffs' bank account pursuant to Plaintiffs' Direct Withdrawal Authorization, despite Plaintiffs being "ready, willing and able to make their payments."   This argument is unavailing.  First, Plaintiffs' claim of being "ready, willing, and able" is in direct conflict with a separate claim by Plaintiffs that "by January 2011, [Plaintiffs] were still unable to make a payment on their mortgage loan modification."  If Plaintiffs did, in fact, have the funds to make all required payments, they have failed to inform the Court as to why they never made any of these payments.

---

[1] Mich. Comp. Laws §§ 600.3205a–e were recently amended, effective December 22, 2011.  As the events giving rise to this case all occurred prior to the amendments, all references to Mich. Comp. Laws § 600.3205a–e regard the previous versions of the statutes.  *See* 2009 Mich. Legis. Serv. 30, 31 (West).

Instead, Plaintiffs appear to place blame on Defendant for not having electronically withdrawn payments from Plaintiffs' account pursuant to the Direct Withdrawal Authorization. This argument, too, must fail. According to the terms of the Direct Withdrawal Authorization, Plaintiffs confirmed that:

> [they] understand that [they] will receive confirmation specifying the date the electronic withdrawals begin. [They] understand that *[they] will continue to make [their] payment until [they] receive this confirmation and electronic withdrawals begin.* [They] understand that this authorization and the program services in no way alter or lessen [their] obligation under [their] existing mortgage contract regarding the amount of monthly payments, when payments are due, the applications of payments, the assessments of late charges or the determination of delinquencies

(emphasis added). Thus, Plaintiffs were required to make their payments under the Modification Agreement until the electronic withdrawals began, and were in default upon their failure to do so.

Last, Plaintiffs argue that they requested a modification meeting, yet Defendant refused to schedule such a meeting and began to improperly foreclose on the Property. According to Mich. Comp. Laws § 600.3205b:

> A borrower who wishes to participate in negotiations to attempt to work out a modification of a mortgage loan *shall contact a housing counselor* from the list provided under section 3205a within 14 days after the list is mailed to the borrower. Within 10 days after being contacted by a borrower, a housing counselor shall inform the person designated under section 3205a(1)(c) in writing of the borrower's request

(emphasis added). Again, Plaintiffs have neither provided evidence, nor even claimed, that they ever contacted a housing counselor, or that they otherwise requested a modification meeting themselves. Instead, Plaintiffs claim only that they "contacted [Defendant] to find out why their mortgage payment was not being deducted," and "called Trott & Trott [and spoke to an individual whose name they do not recall] . . . [and] told her [they] were working on a loan

6

modification." Such discussions, of course, are quite different than contacting a housing counselor and having the housing counselor request a modification meeting from Defendant. For all the above reasons, Count I fails as a matter of law.

## B. COUNT III (PROMISSORY ESTOPPEL)[2]

In Count III, Plaintiffs argue that: Defendant's representatives asserted that a loan modification would be reached and a sheriff's sale would not be scheduled for the Property; that this assertion induced Plaintiffs to "forego other forms of relief that would have cancelled the sheriff's sale"; and that Defendant should therefore be required to modify Plaintiffs' Loan for a second time. Plaintiffs claim that "estoppel is appropriate because the Defendant neglects/refuses to allow the Plaintiffs to perform" under the terms of the Modification Agreement.

Defendant argues that, to the extent that Plaintiffs claim that oral representations made by Defendant regarding a loan modification are inconsistent with any written agreement (which Defendant denies), the claim is barred by the statute of frauds. The Court agrees.

Mich. Comp. Laws § 566.132(2), which deals specifically with financial institutions, provides in relevant part:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extended credit, or make any other financial accommodation.
>
> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

---

[2] For purposes of clarity, the Court will address Plaintiffs' Count II last.

(c) A promise or commitment to waive a provision of a
loan, extension of credit, or other financial accommodation.

Michigan courts have interpreted this statute broadly. In *Crown Technology Park v. D & N Bank, FSB*, 242 Mich. App. 538 (2000), the Michigan Court of Appeals reversed a trial court's denial of a defendant's motion for summary disposition on a plaintiff's promissory estoppel claim. The plaintiff's claim was based on an oral agreement that a promissory note could be pre-paid without penalty. The court rejected the plaintiff's argument that a promissory estoppels claim survives the statute of frauds. The court found that the language of the statute of frauds, codified in Mich. Comp. Laws § 566.132(2), "is unambiguous." *Id*. at 549. The statute of frauds bars any claim, "no matter its label," to enforce a financial institution's alleged promise that is not supported by a written document signed by an authorized representative of the institution. *Id*.

In this case, Plaintiffs' promissory estoppel claim relates to alleged promises and representations that are not contained in any written document signed by Defendant's representatives. This claim is thus barred by Mich. Comp. Laws §566.132(2). Further, any attempt by Plaintiffs to assert promissory estoppel on the basis of Defendant's alleged refusal "to allow Plaintiffs to perform" must also fail. Defendant's alleged failure to allow Plaintiffs to perform under the terms of an oral promise is nevertheless still related to alleged representations not contained in any written document. The statute of frauds, however, applies to all claims that are, at their "core, an action to enforce an oral promise"—regardless of the name given to such claims. *See Id*. at 549. As such, Plaintiffs' promissory estoppel claim fails as a matter of law.

## C.  COUNT IV (VIOLATION OF THE MCPA)

In Count IV, Plaintiffs claim that Defendant violated the MCPA by using methods, acts, or practices in trade or commerce that have been defined as unlawful under Mich. Comp. Laws §

445.903 in connection with the Mortgage.    In addition to claiming that Plaintiffs' pleading as to Count IV fails for lack of any particularity, Defendant argues that it is nevertheless exempt from the MCPA because the statute does not apply to "transaction[s] or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."  Mich. Comp. Laws § 445.904(1)(a).  Defendant's arguments are well-taken.

First, Plaintiffs' claim lacks any facial plausibility, since Plaintiffs failed to plead factual content that allows the court to draw the reasonable inference that Defendant is liable for violating the MCPA.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  In their initial pleading, Plaintiffs failed to allege:  who violated the MCPA by committing "unlawful acts"; what the unlawful acts were; when and where such acts occurred; and how and why such acts were unlawful.  In their response brief, Plaintiffs again failed to set forth any evidence or specific assertions as to how Defendant committed "unlawful acts" in violation of the MCPA.  Because Plaintiffs' allegations in their pleadings and response fail to satisfy even the less stringent Fed. R. Civ. P. 12(b)(6) standards, they also fail to show that a genuine dispute of fact exists as to whether Defendant violated the MCPA.

Additionally and notwithstanding Plaintiffs' failures, the MCPA is inapplicable in this case.  Michigan courts have found that residential mortgage loan transactions are exempt from the MCPA.  *See, e.g., Newton v. Bank W.*, 262 Mich. App. 434, 438 (Mich. Ct. App. 2004).  As such, Plaintiffs' MCPA Count fails as a matter of law.

### D.  COUNT V (NEGLIGENCE)

Plaintiffs argue that Defendant breached a duty to Plaintiffs to comply with industry standards and local, state and federal regulations, by "misrepresenting a course of action to Plaintiffs," by informing Plaintiffs that they did not qualify for a Loan modification, and by

failing to use features that are available under Mich. Comp. Laws § 600.3205a(1)(a) before "taking action." Defendant argues that Plaintiffs' negligence claim lies in contract, and is barred by the parties' express written agreements.

To make out a negligence claim, a plaintiff must allege and prove four elements: duty, breach, causation, and damages. *Schultz v. Consumers Power Co.*, 443 Mich. 445, 449 (1993). Whether a duty exists is a question of law. *Fultz v. Union-Commerce Assoc.*, 470 Mich. 460, 463 (2004). The Michigan Supreme Court has held that in "tort actions based on a contract," courts should use a "'separate and distinct mode of analysis." *Fultz*, 470 Mich. at 467. Specifically, the Court held: "[T]he threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie." *Id. See also Hart v. Ludwig*, 347 Mich. 559, 565–66 (1956) (holding that to maintain an action in tort, there must be a breach of a legal duty separate and distinct from the breach of a legal duty that arises by contract). If the court determines that the defendant did not owe the plaintiff a duty, dismissal of the complaint is proper. *Ross v. Glaser*, 220 Mich. App. 183, 186 (1997).

The Court agrees with Defendant that Plaintiffs' negligence claim is barred by the parties' express written agreements. Plaintiffs have not alleged that Defendant owed them a duty that is separate and distinct from its contractual obligations. Rather, Plaintiffs' allegations relate to Defendant's duties that arise, if at all, based on the Loan, Mortgage, and Modification Agreement. For example, Plaintiffs allege that Defendant owes *Plaintiffs* a duty to comply with statutes and "relevant industry standards for the lending industry, as well as compliance with local, state and federal regulations." This claim is questionable, at best, since no such duty to Plaintiffs exists. *See, e.g., Ulrich v. Fed. Land Bank of St. Paul*, 192 Mich. App. 194, 198–99 (1991) (holding that a lending institution did not owe a borrower a duty of care with respect to

10

determining the borrower's eligibility for the loan). Because Plaintiffs have not alleged the existence of a separate and distinct legal duty that would give rise to a negligence claim, Plaintiffs' negligence claim fails as a matter of law.

**E.  COUNT II (INJUNCTIVE RELIEF)**

In Count II, Plaintiffs attempt to "claim" injunctive relief.   An injunction, however, is a form of relief, not a cause of action.  *See Terlecki v. Stewart*, 278 Mich. App. 644, 663 (Mich. Ct. App. 2008) ("[i]t is well settled that an injunction is an equitable remedy, not an independent cause of action").  Nevertheless, all of Plaintiffs' claims for which relief may have been granted fail as a matter of law.  Plaintiffs are therefore not entitled to injunctive, or other, relief.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, it is HEREBY ORDERED that Defendants' Motion to Dismiss [dkt 9] is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Date:   August 6, 2012

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
U.S. DISTRICT JUDGE
